**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY | ) | |
| as subrogee of Fishers Veterinary Associates, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-cv-1508 |
| | ) | |
| v. | ) | |
| | ) | |
| DAISY NAIL PRODUCTS, INC. and | ) | JURY DEMAND |
| NAIL MAXX PRODUCTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES**

Plaintiff, The Cincinnati Insurance Company ("CIC") as subrogee of Fishers Veterinary Associates, LLC ("Fishers Veterinary"), by counsel, for its Complaint for Damages against Defendants, Daisy Nail Products, Inc. ("Daisy Nail") and Nail Maxx Products, Inc. ("Nail Maxx"), states and alleges as follows:

**PARTIES**

1.     CIC is an Ohio corporation with its principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.

2.     At all relevant times, CIC was licensed to do business in the State of Indiana as an insurance company.

3.     At all relevant times, Fishers Veterinary was a veterinary business, licensed to do business in Indiana with one of its locations at 12530 N. Gray Road, Carmel, Indiana 46033.

4.     At all relevant times, Fishers Veterinary held a policy of insurance with CIC which provided insurance coverage for property damages and other related expenses stemming from risks to property, such as fire.

5.      At all relevant times, Defendant Daisy Nail was a citizen of the State of California incorporated in California with its principal place of business located at 3335 East La Palma Avenue, Anaheim, California 92806.

6.      Defendant Daisy Nail distributed and/or sold products throughout the United States, including Indiana, and otherwise transacted business in Indiana.

7.      At all relevant times, Defendant Nail Maxx was a citizen of the State of California incorporated in California with its principal place of business located at 1234 South Magnolia Avenue, Anaheim, California 92804.

8.      Defendant Nail Maxx distributed and/or sold products throughout the United States, including Indiana, and otherwise transacted business in Indiana.

## JURISDICTION AND VENUE

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000.00, and there is diversity of citizenship.

10.     Venue is proper in this Court pursuant to U.S.C. § 1391(b)(2) as the real and personal property damage that is the subject of this Complaint occurred in Carmel, Indiana.

## FACTUAL ALLEGATIONS

11.     At all relevant times, Fishers Veterinary was located in a strip mall with its store positioned directly next to the store owned and occupied by Tom Nguyen d/b/a Clay Nails ("Clay Nails") and an address of 12534 North Gray Road, Carmel, Indiana 46033.

12.     Upon information and belief, Clay Nails purchased nail salon equipment, specifically the DND Cordless Rechargeable LED/UV lamp ("the lamp"), in new condition, from Defendant Nail Maxx.

13.     Upon information and belief, Defendant Daisy Nail designed, manufactured, assembled, tested, inspected, distributed, and marketed the lamp, and then sold the lamp to Nail Maxx.

14.     Upon information and belief, Clay Nails used the lamp for its normal and intended purpose and use.

15.     Upon information and belief, on June 7, 2019, Clay Nails used the lamp for the first time.

16.     Upon information and belief, approximately four hours after using the lamp for the first time, a fire occurred in the nail salon causing substantial property damage to Clay Nails and surrounding properties, including Fishers Veterinary.

17.     Investigation into the origin and cause of the fire revealed it originated at the lamp, due to a catastrophic failure in the electrical circuitry.

18.     Under the terms of the insurance policy, CIC paid $90,292.56 to or on behalf of Fishers Veterinary for damages sustained as a result of the fire loss.  Fishers Veterinary also incurred a $1,000.00 deductible pursuant to the terms of the CIC insurance policy.  Pursuant to the terms and conditions of the insurance policy and by operation of law, CIC became a subrogee of Fishers Veterinary for a claim of $91,292.56 and became subrogated to the rights of Fishers Veterinary against any person or entity determined to have proximately caused the damages to Fishers Veterinary and its contents.

## <u>COUNT I – NEGLIGENCE</u>

19.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 18 of this Complaint, as though fully set forth in this Count I.

20.     At all relevant times, Defendant Daisy Nail had a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection, distribution, marketing, and sale of the lamp.

21.     At all relevant times, Defendant Nail Maxx had a duty to exercise reasonable care in the inspection, distribution, marketing, and sale of the lamp.

22.     Defendant Daisy Nail, by and through its employees, agents, and/or representatives, was negligent in one or more of the following ways:

a.      Defendant Daisy Nail failed to properly manufacture and/or assemble the lamp; and/or

b.      Defendant Daisy Nail failed to properly design the lamp in that the unit could overheat and ignite nearby combustibles thus constituting a substantial risk of fire; and/or

c.      Defendant Daisy Nail failed to properly design the lamp in that it did not contain a safety mechanism that would shut down the operation of the unit once it reached an overheated condition; and/or

d.      Defendant Daisy Nail failed to properly test the lamp; and/or

e.      Defendant Daisy Nail failed to adequately inspect the lamp; and/or

f.      Defendant Daisy Nail failed to provide proper warning to consumers that the lamp was not adequately protected from reaching an overheated condition and constituted a substantial risk of fire; and/or

g.      Defendant Daisy Nail failed to provide proper warned to consumer that the lamp did not contain a safety mechanism that would shut down the unit's operation when it reached an overheated condition and constituted a substantial risk of fire; and/or

h.      Defendant Daisy Nail failed to correct and/or remedy known defects and/or known dangerous conditions within the lamp; and/or

i.      Defendant Daisy Nail was otherwise negligent in the performance of its duties.

23.     Defendant Nail Maxx, by and through its employees, agents, and/or representatives was negligent in one or more of the following ways:

a.      Defendant Nail Maxx failed to adequately inspect the lamp; and/or

b.      Defendant Nail Maxx failed to properly distribute the lamp; and/or

c.      Defendant Nail Maxx failed to properly market and/or sell the lamp; and/or

d.      Defendant Nail Maxx failed to provide proper warning to consumers that the lamp was not adequately protected from reaching an overheated condition and constituted a substantial risk of fire; and/or

e.      Defendant Nail Maxx failed to provide proper warnings to consumers that the lamp did not contain a safety mechanism that would shut down the unit's operation when it reached an overheated condition and constituted a substantial risk of fire; and/or

f.    Defendant Nail Maxx failed to correct and/or remedy known defects and/or known dangerous conditions within the lamp; and/or

g.    Defendant Nail Maxx was otherwise negligent in the performance of its duties.

24.    As a direct and proximate result of the negligent acts and omissions on the part of Defendants Daisy Nail and Nail Maxx, a fire originated within the lamp on or about June 7, 2019, causing damage to Fishers Veterinary and its contents.

25.    CIC paid $90,292.56 to or on behalf of Fishers Veterinary for damages stemming from the June 7, 2019 fire.

26.    Fishers Veterinary also incurred a $1,000.00 deductible loss pursuant to the terms of its insurance policy with CIC.

WHEREFORE,  The Cincinnati Insurance Company, as subrogee of Fishers Veterinary, hereby prays that judgment be entered in its favor and against Defendants Daisy Nail Products, Inc. and Nail Maxx Products, Inc., in the amount of $91,292.56, plus costs, and for all other proper relief.

## COUNT II – STRICT PRODUCT LIABILITY

27.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 26 of this Complaint, as though fully set forth in this Count II.

28.    The lamp sold by Defendant Daisy Nail was offered for sale to the general public and consumers.

29.    The lamp was expected to reach the general public in the condition in which it was designed, manufactured, tested, distributed, marketed, and sold.

30.    Upon information and belief, the lamp purchased by Clay Nails was in the same condition from the time it left the manufacturer to the time of the fire.

31.    At the time if left the control of Defendant Daisy Nail, the lamp was unreasonably dangerous and defective in light of its foreseeable and intended use, in or more of the following ways:

    a.    The lamp was designed, manufactured, assembled, and/or distributed in such a way as to cause the lithium-ion batters in the lamp to overheat; and/or

    b.    The lamp was designed, manufactured, assembled, and/or distributed in such a way as to cause a malfunction and ignite a fire; and/or

    c.    The lamp was designed, manufactured, assembled, and/or distributed without safety devices to prevent a fire from occurring; and/or

    d.    The lamp was designed, manufactured, assembled, and/or distributed with faulty software that allowed the lithium-ion batteries to overheat, malfunction, and cause a fire; and/or

    e.    The lamp was designed, manufactured, assembled, and/or distributed with a battery cooling system not capable of preventing the batter from overheating, malfunctioning, and causing a fire; and/or

    f.    The lamp was designed, manufactured, assembled, and/or distributed in such a way as to cause a failure of lithium-ion batteries so that the batteries could overheat, malfunction, and cause a fire; and/or

    g.    The lamp was designed, manufactured, assembled, and/or distributed with faculty and defective component parts, including but not limited to the software, cooling system, and/or lithium-ion battery; and/or

    h.    The lamp was designed, manufactured, assembled, and/or distributed with insufficient and inadequate warnings as to the risk of fire.

32.    As a direct and proximate result of the foregoing defects and/or unreasonably dangerous and unsafe conditions of the lamp present at the time it left Defendant Daisy Nail's control and was sold to Clay Nails, a fire originated within the lamp on or about June 7, 2019, causing damage to Fishers Veterinary and its contents.

33.    CIC paid $90,292.56 to or on behalf of Fishers Veterinary for damages stemming from the June 7, 2019 fire.

34.    Fishers Veterinary also incurred a $1,000.00 deductible loss pursuant to the terms of its insurance policy with CIC.

WHEREFORE, The Cincinnati Insurance Company, as subrogee of Fishers Veterinary, hereby prays that judgment be entered in its favor and against Defendant Daisy Nail Products, Inc. in the amount of $91,292.56, plus costs, and for all other proper relief.

Respectfully submitted,

/s/ Catherine D. Nix
Catherine D. Nix (Atty. No. 30128-53)
Law Offices
The Cincinnati Insurance Company
101 W. Washington St., Suite 1100E
Indianapolis, IN 46204
317-632-7146 (Phone)
317-632-7156 (Fax)
Catherine_Nix@staffdefense.com